THE UNITED STATES, *ex relatione* BEVERLY TUCKER, PLAINTIFF IN ERROR, *v.* A. G. SEAMAN, SUPERINTENDENT OF PUBLIC PRINTING.

By the act of congress passed on the 26th of August, 1852, ch. 91, it was made the duty of the superintendent of public printing to receive all matter ordered by congress to be printed, and to deliver it to the public printer or printers.

In 1854, Beverly Tucker was printer to the senate, and O. A. P. Nicholson, printer to the house of representatives.

The act further provided, that when any document should be ordered to be printed by both houses of congress, the entire printing of such document should be done by the printer of that house which first ordered the printing.

In January, 1854, the commissioner of patents communicated to the senate that portion of his Annual Report for 1853, which related to arts and manufactures.; and on the ensuing day the same communication was made to the house of representatives. Each house having ordered it to be printed, the printing was assigned to Mr. Tucker.

In March, 1854, the agricultural portion of the report was sent to both houses, and both of them, on the same day, ordered it to be printed. In actual priority of time, the order of the house was passed first. The printing of it was given to Mr. Nicholson.

A writ of mandamus will not lie from the circuit court of the United States, commanding the superintendent to deliver the printing to Mr. Tucker.

Whether the two portions of the report constituted one document, and which house passed the order first, were questions requiring the exercise of judgment and discretion in the public officer, who had something more than a mere ministerial duty to perform.

The cases upon this point examined.

THIS case was brought up, by writ of error, from the circuit court of the United States for the District of Columbia, holden in and for Washington county.

The question was, whether the Report of the Commissioner of Patents relating to arts and manufactures and also to agriculture, which was divided into the two branches, and made to congress at different times, was, or was not, one document, and

whether the delivery of it to the public printer of one or the other house of congress was, or was not, a mere ministerial duty.

The facts are stated in the opinion of the court.

It was argued by *Mr. Chilton* and *Mr. Johnson*, for the plaintiff in error, and by *Mr. Cushing*, (attorney-general,) for the defendant.

The counsel for the plaintiff in error made the following points : —

The judgment of the court below, refusing the relief asked, found on pages seven to eight of the record, shows the grounds upon which said court rested its judgment in the premises.

The existence or non-existence of the facts upon which, when applied to an act of congress, the petitioner insisted he was entitled to the relief he prayed for, the court below, it will be seen by their judgment, declined to consider or decide. For the purposes of this case, we insist that the facts alleged in the petition must be held to have existed.

The sole question, then, for this court to decide is, whether or not the court below erred in refusing the relief asked, upon the ground that said court had no jurisdiction of the case stated in the petition, or, in other words, that said petition was demurrable. We suppose that if any well-founded objection to the grant of the relief prayed for was to be found upon the face of the petition, although different from those stated in the judgment, which seem, one of them, to have governed the judgment of both judges, and the other to have weighed only with one of them, still, the judgment of the court below would be held valid.

In this view, the whole business of this court, we submit, will be to interpret the act of the 26th August, 1852, ch. 91, referred to in the judgment, and ascertain whether or not, by that act, the appellee, as superintendent of public printing, was or was not, in the matter complained of, a ministerial executive officer, within the meaning of the definition of such officer to be found in the opinion of the court, at the present term, in Goodrich's case.

. We treat Goodrich's case as having definitively settled the law, so far as the facts of any case shall be found to bring it within the scope of the principles therein declared. And if, in the judgment of this court, the present case shows the appellee to have been invested with official discretion in the matter complained of, then the appellant is not entitled to relief.

We insist that the seventh section of the act of congress aforesaid gives to the printer of that house of congress in which

a document is first ordered to be printed, the absolute title to print all the copies ordered by both houses, without reservation, or subject in any manner to the decision or discretion of any one.

Next, that such absolute and unreserved right is not restrained, modified, or affected, by any other section of that act, or of any act of congress.

Next, that there is nothing to be found in the portion of said act creating the office held by appellee, nor in any portion or portions of said act conferring and defining the powers, duties, liabilities, or responsibilities of said officer, any language qualifying, restraining, or subjecting to the judgment of said officer, directly or ·indirectly, to any extent, the right secured to the printer by the said 7th section.

Next, that there is no word in the portion of said act providing for a joint-committee of printing and subjecting said superintendent to the duty of reporting to said committee or to the control of said committee, as specified in the act, which, by any fair construction, can affect, limit, restrain, or submit to the judgment of said superintendent, or to that of the said committee, the right secured to the printer by the said 7th section.

We submit, finally, that the question, which of two houses of congress first orders a document to be printed, is a question of fact which could not by possibility require judicial discretion in its determination. It is a question of fact to be determined only by an inspection of the journals (records) of the houses of congress; and we submit, the question of identity of documents is susceptible of as little difficulty in determining it as the question of the time of the order to·print; that congress, so considering, failed wholly by said act to vest any such discretion in any one.

The first point made by *Mr. Cushing*, for the defendant, was, that the circuit court had not the power to grant the mandamus asked for, either by statute or the common·law.

2. The duties devolved upon Seaman are not those of a mere ministerial character : and, ther fore, the circuit court had no authority to direct in relation to them.

If we concede that the circuit court can order the performance of a mere ministerial duty, the omission complained of in this case was not of a ministerial character. Seaman was appointed superintendent of public printing under the 2d section of the act of August, 1852, (ch. 91,) and his duties are prescribed by the 3d.

(Then followed a recital of the act.)

By the 7th section, it will be seen that, when a document is ordered to be printed by both houses, the entire printing is to be done by the printer of that house which first ordered it. By the 3d, he is to keep an account of the orders received from each house, to deliver out the printing, in conformity therewith, to the proper public printer, and to issue his certificate for the amount due for such printing. These provisions devolve upon him the duty of determining: 1. Which house actually first ordered the printing of a particular document; and, 2. What was included in the document itself, by the terms of the order for printing. These duties involved considering and determining facts, and the construction of written orders. In the discharge of these functions, Seaman determined that the printing of the document in question was first ordered by the house of representatives, and that the previous order, by the senate, did not include this document, which was not then before either house. He decided that the senate order was confined to what was before the senate when it was made, and could not include those not sent to that body, and which might not even have been prepared. A decision upon such questions is not reviewable in, nor subject to the control of, the circuit court. Decatur v. Paulding, 14 Pet. 497; Brashear v. Mason, 6 How. 92; Goodrich v. Guthrie, Dec. Term, 1854; McElrath v. McIntosh, 1 Law Rep. N. S. 399; Worthington v. Bicknell, 1 Bland. Ch. R. 186; Pascault v. The Commissioners of Baltimore, Ib. 584; Bardley v. Lloyd, 1 Harris and McH. 27; Runkle v. Winemiller, 6 Ib. 429; Ellicott v. The Levy Court, H. and J. 184; Williams v. Cadman, 1 G. and Q. 559.

3. Where the superintendent is not clothed with power to determine questions concerning the printing ordered by the two houses of congress, the duty of deciding them necessarily rests with congress itself, and not with the judiciary.

The 12th section of the act of 1852 makes provision, by which the joint committee on printing is clothed with full power to determine, in relation to disputes between the superintendent and the public printers. If the power thus conferred upon the joint committee is not broad enough to reach this case, then, from necessity, its decision must rest with one or both houses of congress. They are fully competent to determine their wants, and the construction and extent of their orders, and how they require them to be executed, and by whom. If a mandamus can issue in the present case, it may lead to most ruinous consequences. If the document in question has been printed under the house order, it may, if the mandamus issues, be reprinted under the senate order, and thus double the number of copies ordered, as well as the expense,

contrary to law, and the intention and orders of the two houses. The writ of injunction is of a more comprehensive character, issuing from the equity side of this same circuit court, forbidding certain acts to be done. If a mandamus will lie, which, in effect, orders printing to be done, an injunction may also be granted to prohibit printing. In that case, if the superintendent should refuse to deliver a document to the senate printer, the latter might enjoin against delivery to the house printer, and thus congress would fail in its printing altogether. A controversy between the public printers might thus, by the use of the mandamus and injunction, retard, if not defeat, legislation. A like controversy might wholly prevent the publication of the laws. It is respectfully submitted, that the matters involved in the present controversy pertain exclusively to the legislative department, and that the judiciary have no authority over them.

Mr. Chief Justice TANEY delivered the opinion of the court.

The defendant in error, at the times hereinafter mentioned, was, and still is, superintendent of public printing of the two houses of congress; and the relator printer to the senate, and O. A. P. Nicholson printer to the house of representatives.

By the act of August 26, 1852, it is made the duty of the superintendent to receive, from the secretary of the senate and the clerk of the house of representatives, all matter ordered by congress to be printed, and to deliver it to the public printer or printers. And the 12th section provides, that when any document shall be ordered to be printed by both houses of congress, the entire printing of such document shall be done by the printer of that house which first ordered the printing.

On the 31st of January, 1854, the commissioner of patents communicated to the senate that portion of his annual report for 1853 which relates to arts and manufactures, which that body, on the same day, ordered to be printed; and, on the following day, it was communicated to the house of representatives, who passed a similar order. This communication was delivered by the superintendent to the relator.

On the 20th of March, 1854, the commissioner communicated to both houses the agricultural portion of his report, which each house, on the same day, ordered to be printed; the order of the house of representatives being, it is admitted, first made.

The relator claimed, that the report of the commissioner of patents was but one document, within the meaning of the act of congress above referred to, and that, by virtue of the order of the senate of the 31st of January, 1854, he was entitled to

the printing of the agricultural portion of the report, although the printing of this part was first ordered by the house of representatives. The superintendent, however, refused to deliver it; and the relator thereupon applied to the circuit court for the District of Columbia for a mandamus, to compel the delivery. That court was of opinion that it had not jurisdiction of the case, and refused the mandamus; and this writ of error is brought by the relator.

The power of the circuit court of this district to issue writs of mandamus to an officer of the government in Washington, has frequently been the subject of discussion in this court. It was before the court in Kendall v. Stokes, 12 Pet. 524; in Decatur v. Paulding, 14 Ib. 497; in Brashear v. Mason, 6 How. 92; and again, in Goodrich v. Guthrie, at the present term. The rule to be gathered from all of these cases is too well settled to need further discussion. It cannot issue in a case where discretion and judgment are to be exercised by the officer; and it can be granted only where the act required to be done is merely ministerial, and the relator without any other adequate remedy.

Now, it is evident that this case is not one in which the superintendent had nothing to do but obey the order of a superior authority. He had inquiries to make, before he could execute the authority he possessed. He must examine evidence; that is to say, he must ascertain in which house the order to print was first passed. He may, it is true, generally obtain this from the journals of the two houses, but yet he must examine them, and compare the dates of the orders; and, in this particular case, it may even have been necessary to take oral testimony, before he could determine the fact of priority, as the order was passed in each house on the same day. And, after he had made up his mind upon this fact, it was still necessary to examine into the usages and practice of congress, in marking a communication in their proceedings as a document; and to make up his mind whether separate communications upon the same subject, or on different subjects from the same office, when made at different times, were, according to the usages and practice of congress, described as one document, or different documents, in printing and publishing their proceedings. He was obliged, therefore, to examine evidence, and form his judgment before he acted; and, whenever that is to be done, it is not a case for a mandamus.

Nor is there any reason of public policy or individual right, which requires that this remedy should be extended beyond its legitimate bounds, in order to embrace cases of this description; for it would embarrass the operations of the legislative and exec-

utive departments of the government, if the court of this district was authorized to interfere, by this summary process, in controversies between officers, in their respective employments, whenever differences of opinion as to their respective rights may arise. If these differences cannot be adjusted by the authorities under which they are acting, an ordinary action at law would be an adequate remedy for any injury sustained.

It seems to be supposed that the case of Kendall v. Stokes justified this application; but it is altogether unlike it. The award of the solicitor of the treasury, in that case, was an official act; he was the officer appointed by act of congress to settle that account, and determine the amount of credit to which Stokes was entitled, if to any; and all that the post-master-general was required to do was, to enter it in the books of the department, when reported to him by the solicitor of the treasury. He was merely to record it. His duty, under that act of congress, was like that of a clerk of a court, who is required to record its proceedings; or, of an officer appointed by law to record deeds, which a party has a right by law to place on record; or of the register of the treasury of the United States, to record accounts transmitted to him by the proper accounting officers, to be recorded. The duty, in such cases, is merely ministerial; as much so as that of a sheriff or marshal to execute the process of a court.

This was the point decided in Kendall v. Stokes, and the subsequent cases have all been decided upon the same principles. They are in no degree in conflict with it; on the contrary, they have followed it.

But the case before us, for the reasons above stated, is unlike that of Kendall v. Stokes, and the circuit court were right in refusing the mandamus. The judgment must, therefore, be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof it is now here ordered and adjudged by this court that the judgment of the said circuit court in this cause be and the same is hereby affirmed with costs.