KIMBERLIN vs COMMISSION TO FIVE CIVILIZED TRIBES.

## Opinion Delivered October 26, 1899.

*1. Writ of Mandamus—Power of United States Court to Issue.*

The United States Court in the Indian Territory has all the rights to issue the writ of mandamus that are conferred upon the Circuit Court of the State of Arkansas under Mansf. Dig. §§ 4568 and 4569 (Ind. T. Ann. St. 1899 §§ 2974 and 2975).

*2. Dawes Commission—Subject to Mandamus.*

While the Dawes Commission, in the performance of its duties as defined by law in certain matters, acts quasi judicially, yet it belongs to the executive branch of the government, and its members are ministerial officers thereof, and as such are subject to all process of the court in proper cases.

*3. Dawes Commission—To what extent subject to Mandamus.*

The Dawes Commission is given full authority to hear evidence as to citizenship and to decide thereon, and as such it acts judicially and cannot be compelled by mandamus to decide in favor of or against any particular applicant, further than to require such commission to act and proceed to judgment.

Appeal from the United States Court for the Southern District.

. HOSEA TOWNSEND, Judge.

Action by Mary Jane Kimberlin against the commission to the Five Civilized Tribes for a writ of mandamus to compel it to enroll her as a person intermarried in the Chickasaw Nation. Judgment sustaining a demurrer to the complaint. The relator appeals. Affirmed.

This was a petition for mandamus filed by appellant in the United States court for the Southern district of the

Indian Territory, praying that the appellee, the commission to the Five Civilized Tribes, be required to enroll the appellant on the rolls of the Chickasaw Nation, as an intermarried white person.   The petition is as follows:

"Mary Jane Kimberlin, your relator, respectfully shows to the court:   "That William G. Kimberlin, being a white man, in the year 1870, in conformity with the laws and regulations of the Chickasaw Nation of Indians relating to marriage, and within the territorial limits of said nation, was lawfully married to Lizzie Mitchell, a Chickasaw Indian by blood, and the said William G. Kimberlin thereby became a member of said nation, as though he was a native Chickasaw.   That thereafter, and after the decease of the said Lizzie Kimberlin, in the year 1890, your relator, being a white person, made application for, and, by paying the $50 as required by law, obtained from the county judge of Pickens county, in the Chickasaw Nation, in conformity with the laws of the said Chickasaw Nation relating to marriage between white persons and members of said tribe, a license to marry said William G. Kimberlin, a member as aforesaid of said nation of Indians, and was in said year 1890, and within the territorial limits of said nation, lawfully married to said William G. Kimberlin, according to the laws and regulations aforesaid, and thereby became a member of said nation, as though she was a native Chickasaw.   That, since the marriage of your relator as aforesaid, she has continuously lived in the Chickasaw Nation with her said husband. That on the 28th day of August, 1897, your relator made application to the respondents, the commission to the Five Civilized Tribes, for enrollment as a member of the Chickasaw Nation of Indians, and filed with said respondents her petition for enrollment in writing, in words and figures as follows, to-wit:

" 'To the Honorable Commission to the Five Tribes.

(3)

Mary Jane Kimberlin, Grant Coppage Kimberlin, and Mary Susan Kimberlin vs The Chickasaw Nation. Petition for Enrollment. Your petitioners respectfully represent: That William Grant Kimberlin is a citizen of the Chickasaw Nation by intermarriage with Lizzie Mitchell, a Chickasaw Indian by blood, in 1870. That he was enrolled and received his pro rata share of the leased district moneys. A copy of the certificate of the national secretary of that fact is hereto attached, marked 'Exhibit A.' That your petitioner, Mary Jane Kimberlin, was, on the 9th day of November, 1890, married to said William Grant Kimberlin, according to the tribal laws and regulations. A copy of said marriage license and certificate of marriage is hereto attached, marked 'Exhibit B.' That Grant Coppage Kimberlin, five years old, and Mary Susan Kimberlin, nine months old, are the issue of said marriage. Wherefore your petitioners pray that their names be entered upon the rolls of citizenship of the Chickasaw Nation. Rennie, Brents & McClure, for petitioners.

" 'Mary Jane Kimberlin, being first duly sworn, deposes and says that the children above named are her offspring from her marriage with William Grant Kimberlin, and that Mary Susan Kimberlin was born on the 13th day of November, 1896. Mary Jane Kimberlin.

" 'Subscribed and sworn to before me this 14th day of August, 1897. Claude Weaver, Notary Public. [Seal.]'

"Attached to said petition were the following affidavits and exhibits, to-wit:

" 'I, William Grant Kimberlin, do solemnly swear that I was, in 1870, married to Lizzie Mitchell, a Chickasaw Indian by blood, in the Chickasaw Nation; that I am the identical person to whom license, in the name of G. W. Kimberlin, was issued by W. H. Duncum, county and probate

judge of Pickens county, Chickasaw Nation, on the 4th day of November, 1890, to marry Mrs. M. J. Hancock; that the Mary Jane Kimberlin now applying for enrollment in the Chickasaw Nation is the identical person named in said license as Mrs. M. J. Hancock; that the said Mrs. M. J. Hancock and I were married on the 9th day of November, 1890; that Grant Coppage Kimberlin, now five years old, and Mary Susan Kimberlin, now nine months old, now applying for enrollment in the Chickasaw Nation, are the issue of said marriage.   W. G. Kimberlin.

" 'Subscribed and sworn to before me this 14th day of August, 1897.   Claude Weaver, Notary Public.   [Seal.]'

" 'I, C. J. Grant, do solemnly swear that I signed the application for marriage license which was issued in the name of G. W. Kimberlin, on the 4th day of November, 1890; that I am well acquainted with Mary J. Kimberlin, now applying for enrollment in the Chickasaw Nation, and William Grant Kimberlin, and know them to be the identical persons for whom said licence was issued.   C. J. Grant.

" 'Subscribed and sworn to before me this 14th day of August, 1897.   Claude Weaver, Notary Public.   [Seal.]'

" 'Exhibit A.

" 'Office of National Secretary, Chickasaw Nation, Tishomingo, I. T.   I hereby certify that the following names appear on the late annuity rolls of the Chickasaw Nation, viz.:  W. G. Kimberlin, Zada Kimberlin, Wm. Kimberlin, Earnest Kimberlin.   Given under my hand and official seal this 5th day of October, A. D. 1896.   L. C. Burris, Natl. Secy. C. N.   [Seal.]'

" 'I do hereby certify that the foregoing is a true and correct copy of a certificate under the hand and seal of the national secretary of the Chickasaw Nation, now before me. Witness my hand and seal this 14th day of August, 1897.

Claude Weaver, Notary Public in and for the Southern District of the Indian Territory.    [Seal.]'

"  'Exhibit B.

"  'The Chickasaw Nation, County of Pickens.    I, W. H. Duncan, county and probate judge of Pickens county, have this day received the written testimony of A. W. Shelton, C. J. Grant, A. R. Waite, John T. Hill, and J. W. Burks that Mrs. M. J. Hancock is a suitable lady to engage in matrimony with G. W. Kimberlin, who is a citizen of the Chickasaw Nation, to the best of my knowledge; and from the testimony of the above-named citizens, and the word "suitable," I infer that Mrs. M. J. Hancock has resided in the Chickasaw Nation the time required, and has fully complied with the law in relation to marriage.    Therefore, by virtue of the authority in me vested, I hereby grant unto Mr. G. W. Kimberlin, a citizen of the Chickasaw Nation, and Mrs. M. J. Hancock, a citizen of the United States, license to consummate said marriage.    Given under my hand this 4th day of November, 1890.    W. H. Duncum, County and Probate Judge, P. C. C. N.'

"  'To all whom it may concern:  This is to certify that I, T. H. Day, did on the 9th day of November, 1890, solemnize the rites and publish the banns of matrimony between Mr. G. W. Kimberlin, of the Chickasaw Nation, and Mrs. M. J. Hancock, of the United States, according as the law directs.  My credentials are recorded as follows: 3rd division, Book A, p. 50.  This is the 9th day of Nov., 1890.  T. H. Day, M. G.'

"Indorsed:  'Marriage License.  Filed for record in clerk's office this 19th day of Nov., 1890.  A. J. Lewis, Clerk of C. C.'

"  'Chickasaw Nation, Ind. Ter., County of Pickens. I, A. J. Lewis, clerk of the county court of Pickens county,

Chickasaw Nation, Ind. Ter., do hereby certify that the foregoing was duly filed for record and correctly recorded on page 203, on marriage records of Pickens county, C. N. Witness my hand and seal in said county, at office in Pickens county, this 19 day of November, 1890. A. J. Lewis, County Clerk, Pickens Co., Chickasaw Nation.'

" 'I do hereby certify the foregoing to be a correct copy of the original marriage license certificate of marriage and certificate of record. As witness my hand and seal this 14th day of August, 1897. Claude Weaver, Notary Public in and for the Southern Judicial District of the Indian Territory. [Seal.]'

"That up to the 21st day of September, 1898, the said written petition had not been acted upon by the respondents herein. That on said 21st day of September, 1898, pursuant to the rules and regulations of the respondents, and in accordance with the published notices of the respondents, your relator renewed her application for enrollment through her husband, William G. Kimberlin, orally, under said regulations. That said husband for your relator made an oral statement under oath before respondents on said day and date, in the town of Ardmore, in the Southern judicial district of the Indian Territory, of the facts and circumstances hereinbefore set forth, in the presence of the attorneys and representatives of the Chickasaw Nation. That none of said facts and circumstances were disputed or controverted by the respondents, or by any member of the commission appointed by the governor of said nation there present, or by any other person, and none of said facts and statements are now disputed or controverted, but, on the contrary, said facts and statements were expressly admitted to be true by all of said persons representing said Chickasaw Nation at said hearing, and accepted to be true by the respondents, in the statement of their acting chairman, Mr. Tams Bixby,

'That is all true, but we cannot enroll this applicant.' The respondents absolutely refused to enroll your relator, refused to make any minute or record of said application, and refused to make any minute or record of such refusal. That all these facts essential to the enrollment of your relator being admitted to be true left no matter connected therewith requiring the exercise of official judgment on the part of the respondents, and devested the respondents of any power of a discretionary nature. That, under and by virtue of the acts of congress in this behalf, it was the duty of the respondents, resulting from their official stations, to enroll your relator as an intermarried white person upon the rolls then being prepared by them, and it is the duty of the respondents at this time to enroll your relator on raid rolls, still under preparation by them. That upon the completion of said rolls by the respondents, and the approval of the same by the honorable secretary of the interior, said rolls, under the acts of congress in that behalf, become final, and the persons whose names are found thereon, with their descendants thereafter born to them, with such persons as may intermarry according to the tribal laws, shall alone constitute the Chickasaw Nation of Indians. That your relator has no remedy save through this, her petition for mandamus, and the law affords no other adequate or specific remedy to secure the enforcement of the right, and the performance of the duty, which it is sought by this petition to coerce. That the respondents, in their hearings in the Chickasaw Nation, in taking the census and making up the rolls of said nation, had no regular or settled practice of forms or precedure, and your relator is unable to state, in response to the motion of respondents, whether or not her rejection was in the usual and ordinary manner adopted by the commission for applicants whose enrollment was denied, and your relator is unable to state whether or not any judgment in refusing to enroll applicants was made other than the kind

made in the case of the relator. Your relator further respectfully shows to the court that ever since the 19th day of November, 1890, the name of your relator has been upon the judicial records of the Chickasaw Nation as a citizen of said tribe by intermarriage, by the record of her said marriage license and marriage certificate, and that said nation has no official and settled roll of its citizens approved by the legislature, as far as is within the knowledge of your relator. This last statement is made on reply to the sixth section of the respondents' motion to require your relator to make her complaint more specific and certain. Wherefore your relator prays this honorable court for a writ of mandamus commanding the respondents to enroll your relator on the rolls of the Chickasaw Nation as an intermarried white person."

To this petition the following demurrer was interposed: "Comes now the respondents herein, by their attorney, and present this, their demurrer to the bill of the relator: First, because the bill states no cause of action sufficient to authorize the court to grant the relief prayed for; second, because the court has no jurisdiction over the subject-matter involved in this action; third, because no court has the jurisdiction to compel a co-ordinate branch of the government to do that which it alone has authority to do, or to revise or correct its judgment, so long as it acts within the scope of its authority." The demurrer was sustained by the court, exceptions duly saved, and the cause regularly appealed to this court.

*Albert Rennie* and *John A. McClure*, for appellant.

*W. B. Johnson, U. S. Atty.*, for appellee.

CLAYTON, J. The error assigned is "that the court erred in sustaining the demurrer, dismissing the petition,

and denying the writ of mandamus." It is claimed by the learned counsel for appellee in his brief that this court has no jurisdiction in any case, or under any conditions or circumstances, to issue the writ of mandamus against the commission to the Five Civilized Tribes. This position cannot be maintained. The power of the circuit courts of Arkansas to issue the writ of mandamus was conferred on the United States courts in the Indian Territory by Act Cong. May 2, 1890 (Supp. Rev. St. U. S. p. 731), which put in force in this jurisdiction chapter 100 of Mansfield's Digest of the Laws of Arkansas (chapter 46, Ind. T. Ann. St. 1899). The first section of that chapter is section 4568 of the Digest (section 2974, Ind. T. Ann. St, 1899), which reads as follows: "The circuit courts shall have power to issue writs of mandamus to the courts of probate, county courts, justices of the peace, and all other inferior officers in their respective circuits." Section 4569 (section 2975, Ind. T. Ann. St. 1899) reads as follows: "The writ of mandamus, as treated of in this chapter, is an order of a court of competent and original jurisdiction, commanding an executive and ministerial officer to perform an act, or omit to do an act, the performance or omission of which is enjoined by law, and is granted on the motion of the party aggrieved, or of the state, when the public interest is affected." While this commission, in the performance of its duties as defined by law in certain matters, acts quasi judicially, yet it belongs to the executive branch of the government, and its members are ministerial officers thereof, and as such are amenable to all appropriate process of the courts in proper cases. But, while this is true, in all matters of duty imposed on it by law, requiring the exercise of judgment or discretion, it cannot, as to such duties, be controlled by mandamus. High, Extr. Rem. 46. When an officer is given power to hear evidence and render judgment, the writ of mandamus will not be awarded, further than to require him to act and proceed to judgment.

U. S. Court can issue writ of mandamus.

Dawes Commission subject to mandamus.

Mandamus not allowed to require particular decision.

U. S. vs Seaman, 17 How. 225. "When an official duty in question involves the necessity upon the part of the officer of making some investigation, or of examining evidence and forming his judgment thereon, the writ of mandamus is improper." High. Extr. Rem. 43. Before the writ can issue, it must be shown that the duty to be performed by the officer is clear and certain, involving no discretionary power or judicial determination. Does the petition of the applicant show this? It sets out, among other things, that the petitioner is a white woman by blood; that her husband is a white man by blood, but that she is entitled to be enrolled as a Chickasaw citizen by virtue of her marriage to her white husband, he having acquired his right to Chickasaw citizenship by virtue of a former marriage to a Chickasaw woman by blood, who, prior to his last marriage, had died. Conceding that these facts, if true, would entitle the petitioner to be enrolled, how are they to be established, except by the production of proof and a judicial determination of the fact? A white woman, married to a white man, presents herself before the commission, demanding to be enrolled as an Indian citizen. In such a case, is the fact that she is an Indian citizen a certain one? Is it so plain that it becomes the duty of the commission, without investigation and the taking of proof, to at once enroll her? Certainly not. The very fact that she produced her proof in the shape of affidavits, certificates, and oral proof before the commission, all of which were examined and heard, disproves the fact. Under the law, it was specifically made the duty of the commission to take proof, and judicially determine her rights. The act of congress of June 10, 1896 (29 Stat. 339), provides as follows: "That said commission is further authorized and directed to proceed at once to hear and determine the application of all persons who may apply to them for citizenship in any of said nations, and after such hearing they shall determine

the right of such applicant to be so admitted and enrolled: provided, however, that such application shall be made to such commissioners within three months after the passage of this act. The said commission shall decide all such applications within ninety days after the same shall be made; that in determining all such applications said commission shall respect all laws of the several nations or tribes, not inconsistent with the laws of the United States, and all treaties with either of said nations or tribes, and shall give due force and effect to the rolls, usages and customs of each of said nations or tribes: and provided, further, that the rolls of citizenship of the several tribes as now existing are hereby confirmed, and any person who shall claim to be entitled to be added to said rolls as a citizen of either of said tribes and whose right hitherto has either been denied or not acted upon, or any citizen who may within three months from and after the passage of this act desire such citizenship, may apply to the legally constituted court or committee designated by the several tribes for such citizenship, and such court or committee shall determine such application within thirty days from the date thereof. In the performance of such duties, said commission shall have power and authority to administer oaths, to issue process for and compel the attendance of witnesses, and to send for persons and papers, and all depositions and affidavits and other evidence in any form whatsoever heretofore taken where the witnesses giving said testimony are dead or now residing beyond the limits of said territory, and to use every fair and reasonable means within their reach for the purpose of determining the rights of persons claiming such citizenship, or to protect any of said nations from fraud or wrong, and the rolls so prepared by them shall be hereafter held and considered to be true and correct rolls of persons entitled to the rights of citizenship in the several tribes." Whether, under more recent legislation, this commission had, at the time of

this application, any power to add to the rolls the name of any person who was not a descendant of some person already enrolled, or "such additional names and their descendants as have been subsequently added either by the council of the Chickasaw Nation, the duly-authorized courts thereof, or the commissioners, under the act of June 10, 1896," is at least doubtful. If it had not, then this applicant was without any right to be enrolled. We do not, however, in this case, deem it necessary to decide this question; because the act of June 10, 1896, supra, is so plain that the commission, on the question before it, was required to judicially determine the rights of the petitioner to be enrolled, that the determination of the question cannot be reviewed by this proceeding. The judgment of the court below is affirmed.