Thomson, J.
*377 Proceeding in mandamus to compel the city council of the city of Denver to pass, and the mayor to approve, an ordinance, appropriating certain specified sums of money to defray the expenses of the fire and police board during the year 1902.
The averments of the petition, recited in the alternative writ, were that on the 29th day of November, 1901, the board presented to the mayor a detailed statement of the moneys necessary to defray its expenses during the year 1902, from which it appeared that the following sums were required: For the maintenance of the fire department, $225,511; for the maintenance of the police department, $244,403.68, and for the maintenance of the bureau of excise, $4,800; that this statement was thereupon transmitted by the mayor to the city council; that the mayor in making his recommendations for the annual appropriation ordinance for the year 1902, disregarded the statement of the fire and police board, and recommended for the fire department an appropriation of only $160,000, and for the police department an appropriation of only $150,000, and recommended no appropriation for the bureau of excise; that the total revenue of the city for the year 1902 from the tax levied for general purposes, and from licenses and other sources, was estimated at the sum of $966,406; that the board of aldermen, on the 10th day of January, 1902, passed a bill for an ordinance making appropriations for the support and maintenance of the several departments for the year 1902, in which an insufficient amount was set aside for the fire and police board; that the board of supervisors threaten to pass, and the mayor to sign, the same bill; that the amounts asked by the board are necessary for the maintenance' of the several departments under its control; that the bill as passed by the board of alder *378 men makes unnecessarily large appropriations for the maintenance of other departments, thus absorbing revenue which would otherwise be available to the board; and that a sufficient appropriation for the necessities of the board cannot be had, unless it be compelled by a writ of mandamus. The alternative writ commanded the board of aldermen and the board of supervisors, together constituting the city council, to pass, and the mayor to sign, an ordinance appropriating to the fire department for its maintenance during 1902 $225,000, to the police department $224,-000, and to the bureau of excise $4,800; or, on a day specified in the writ, to show cause why they should not be required so to do.
The respondents demurred to the alternative writ for insufficiency. Their demurrer was overruled, and they answered denying that the amount demanded by the board was necessary for the maintenance of its bureaus, or that the public interest required the appropriation asked, or that the other appropriations were excessive. The answer also set forth in full the statement presented on the 14th day of December, 1901, by the mayor to the city council, of the amounts necessary to defray the expenses of the city government for the ensuing year, and the bill for the annual appropriation ordinance passed by the board of aldermen in pursuance of the mayor’s statement. In the statement of the mayor shown by the answer, he recommended an appropriation of $160,-000 to the fire department, but modified, the recommendation by a request that out of the amount there should be expended the sum of $20,000 for a fire engine and hose, and for other purposes. The bill as passed by the aldermen provided for an appropriation to the police department of $150,000 — the sum named by the mayor. The following is the provision of the bill in relation to the fire department:
*379 “There is hereby appropriated to the fire and police board for the use of the fire department of the city of Denver the snm of one hundred and forty-seven thousand dollars ($147,000) for the payment of salaries, rentals, electric lights, gas, repairs on fire apparatus, and all other expenses incidental to the operation and maintenance of said fire department. There is further appropriated the following sums of money to be expended by the commissioner of supplies for the use of the fire department: The sum of five thousand five hundred dollars ($5¿500) for the purchase and installation into service of a No. 1 Metropolitan fire engine; four thousand dollars ($4,000) for the purchase of five thousand feet of standard hose; and three thousand five hundred dollars ($3,500) for necessary repairs on the several hose houses.”
A demurrer to the answer was sustained, and the alternative writ made peremptory.
The fire and police board of the city of Denver was established by an act of the legislature, approved March 4, 1891, entitled “An act to repeal articles 7 and 8 of ‘An act to reduce the law incorporating the city of Denver and the several acts amendatory thereof into one act, and to amend and revise the same, ’ approved March 16,1885, and to enact articles in lieu thereof. ” — Session Laws 1891, p. 65.
The articles which were repealed related to the police department and the fire department. Article 7 provided for a police department, composed of a chief of police, to be appointed by the mayor with the consent of a majority of the members elect of the board of supervisors, together with such policemen as might be appointed by the mayor without confirmation ; and a board of police, consisting of a mayor, the president of the board of supervisors, the president of the board of aldermen, and one other super *380 visor, and one other alderman, to be appointed by the mayor. Article 8 provided for a fire department, consisting of a chief engineer, an assistant chief engineer and a fire warden, to be appointed by the mayor, with the consent of a majority of the members elect of the board of supervisors, and of the members of the several fire companies to be appointed by the mayor, and, at his discretion, discharged. — Session Laws 1885, pp. 107, 110.
The enactment which took the place of the repealed articles, provided for the appointment by the governor of the state, with the advice and consent of the senate, of three persons, who should constitute the fire and police board, and vested in the board so constituted all powers and duties connected with the appointment, removal, government and discipline of the officers and members of the fire and police departments, and the fixing of their salaries, under rules and regulations to be adopted by the board. It also contained the following provision:
“During the last quarter of the calendar year, the said fire and police board shall present to the city council of the city of Denver, a detailed statement of the money necessary to defray the expenses of the fire, police and detective departments of the.city for the succeeding year, together with a statement of the probable expenses to be incurred by said board; and in the annual appropriation ordinance for the next calendar year, the city council shall provide for the appropriation of sums of money sufficient to defray the expenses incident to said departments and to be incurred by said board.” — Session Laws 1891, pp. 65,- 68.
This provision was subsequently amended by adding the words,. “using. such estimates as a basis *381 for such, appropriation, and conforming thereto as nearly as the condition of the city finances will permit.” — Session Laws 1891, p. 74.
On April 3, 1893, an act was approved entitled “An act to revise and amend the charter of the city of Denver.” — Session Laws 1893, p. 131.
By that act, previous legislation, unchanged, or with altered phraseology, and new provisions, were consolidated into the present charter of the city. The constitution of the fire and police hoard is provided for in section 44 of article 3 of this charter, as follows :
“The department of public health and safety shall include the following officers, who shall respectively be the heads, and have active charge of the affairs, of the following bureaus, to wit: A fire commissioner, of the bureau of fire. A police commissioner, of the bureau of police. An excise commissioner, of the bureau of excise. A health commissioner, of the bureau of health. A commissioner of inspection, of the bureau of inspection. The fire commissioner, police commissioner and excise commisisoner shall constitute the fire and police board of the city of Denver, and all the operations of the bureaus of fire, police and excise, shall be subject to the general control of said board. ”
The section following, in so far as it provides for the manner of appointment of the members of the board, is taken from section 1 of the act of March 4, 1891, establishing the board. The provision of the latter act concerning appropriations for the expenses of the fire and police board, and the subsequently added words, appear in section 53 of article 3 of the charter in the following form:
“During the last quarter of each calendar year, said board shall present to the mayor of the city .of Denver, a detailed statement of the. moneys necessary *382 to defray the expenses of said hoard during the succeeding year, with a statement of the probable expenses to be incurred by said hoard; and in the annual appropriation ordinance for the next calendar year, the city council shall provide for the appropriation of sufficient moneys to defray the expenses incident to and to be incurred by said board in the exercise of the powers hereinabove granted, using such estimates as a basis for such appropriation, and conforming thereto as nearly as the city’s finances will permit. ’ ’
The general annual appropriation is provided for in section 6, article 6, as follows:
“During the last quarter of each calendar year, the mayor shall present to the city council a detailed statement of the moneys necessary to defray the expenses of the city government for the next year, and for this purpose shall require from the heads of the various departments of the city government detailed statements of the probable expenses to he incurred in their several departments. As soon thereafter as possible, the city council shall pass an annual appropriation ordinance for the next calendar year, providing for the appropriation of certain definite sums of money to defray the expenses incident to each department of the city government, based upon the estimate of the mayor, but not of necessity governed by it. The total amount appropriated by such ordinance shall in no case exceed the probable amount of money that will he received during the year by taxation and from other sources of revenue.” — Session Laws 1893, p. 197.
By section 20 of article 2, the management and control of the city’s finances, and all property of the corporation, is confided to the city council, except as otherwise provided in the act; and the council is empowered to provide for the purchase of steam fire *383 engines and other apparatus for the extinguishment of fires. — Session Laws 1893, pp. 144, 149.
Sections 47 and 48 of article 3 confer upon the fire and police hoard “full, complete and exclusive power and authority on behalf of the city to perform all executive functions of the city in the organization, management and control of the fire and police departments of the city”; and, in the exercise of the powers conferred by the act, “full, complete and exclusive authority to expend, for and on behalf of the city, all funds set apart in the annual appropriation ordinance for the use of said board.” — Session Laws 1893, pp. 173, 175.
Some incidental subjects of dispute between counsel will be disposed of before a consideration is entered upon of the principal question in the 'case. In behalf of the mayor and council it is urged that as the fire and police board is required by the terms of section 53 of article 3 to present its statement of the moneys it deems necessary, to the mayor, and as section 6 of article 6 provides that the mayor shall present to the city .council a detailed statement of the moneys necessary to defray the expenses of the city government for the next year, and shall require from the heads of the various departments of the city government the information necessary to his statement; and as the latter section further provides that the appropriation ordinance following the mayor’s statement, shall be based upon it, but not necessarily governed by it; the estimates for the fire and police departments which are laid before the council, are the mayor’s estimates, and the council is clothed with the same discretionary authority to say what the appropriation for the board shall be, that it possesses in respect to the other departments, and that such discretion is beyond the control of the courts.
The portion of section 6, of article 6, which I *384 have quoted', was taken from the act of April 2, 1885, and was section 6 of article 6 of that act. By articles 7 and 8 of the same act, the officers of the fire and police departments received their appointments from the mayor. Pie was chairman of the hoard of police, he appointed the policemen, and he appointed, and, at his discretion, discharged the members of the fire companies. The same relations existed between him and all the departments of the city government, and he had the same right to require statements of probable expense from one department as from another. But in 1891, his relations with the fire and police departments were dissolved. The fire and police board then established, while it is one of the agencies for the accomplishment of the purposes for which the municipality was organized, and is a part of the city government, is independent of the mayor. It is its estimates,- and not the mayor’s statement, that the council must use as a basis for the appropriation made to defray its expenses. The fire and police departments, for whose expenses he was required to present estimates by the act of 1885, ceased to exist; and he is not authorized to speak for the .fire and police board. The law requiring estimates from him is .still in force, but the fire and police board was never within its operation.
However, in opposition to this view, it is said that when the provision of the original act establishing the fire and police board that its estimates should be presented directly to the city council, was so changed as to require their presentation to the mayor, that board was placed upon an equality with the other departments, and required like them to furnish a report to the mayor, to be incorporated by him into his own detailed estimate; and it is argued that the very fact of the change indicates that such was the legislative intent. But the particulars in which the *385 later law differs from the former, and upon which counsel venture no comment, vitiate the reasoning and invalidate the conclusion. As no estimate of the hoard’s expenses except its own can be considered by the council, and as the appropriation can be based on no estimate except the one furnished by it, it seems evident to me that the legislature regarded the presentation of the board’s statement to the mayor merely as a more convenient method of bringing it to the attention of the council, and that the mayor’s duty is simply to transmit it to that body without expression of his own views. The incorporation into his statement of a recommendation respecting the appropriation to be made for the board, is absolutely purposeless. It imparts no symmetry to the document, and is without practical utility.
The bill passed by the aldermen, and now resting with the supervisors, appropriated $13,000 for the use of the fire department to be devoted to the purchase of a fire engine and a quantity of hose, and to repairs on hose houses, the money to be expended by the ‘ ‘ commissioner of supplies. ’ ’ The appropriation of $13,000 for the use of the fire department would be valid, and would give the fire and police board the right to the money; but a provision that the money should be expended by the ‘ ‘ commissioner of supplies” or by any other agency than the board itself, would be absolutely void. The law gives the board general control of all the operations of the bureaus of fire, police and excise; and full, complete and exclusive power in behalf of the city to perform all executive functions of the city in the organization, management and control of the fire and police departments; and the full, complete and exclusive authority to expend for and on behalf of the city, all funds set apart in the annual appropriation ordinances for the use of the board.' The powers granted *386 to the hoard are expressed in absolute terms. The language employed renders doubt as to the intention of the legislature impossiblé. The bill sets apart $13,000 for the use of the board, but provides for its expenditure through another agency. This provision for the expenditure of the money is in direct contravention of the law. In the operation of its bureaus, the performance of its executive functions, the control of the' fire and police departments and the expenditure of all funds set apart for its use by the annual appropriation ordinance, its authority is full, complete and exclusive, and the city council is absolutely powerless to take from it a single one of its prerogatives.
But certain other charter provisions' are mentioned by which it is said the grants of authority to the board are qualified. Among the powers granted to the city council is one ‘ ‘ to provide for the purchase of steam fire engines and other apparatus suitable for extinguishing fires. ’ ’ In the charter of 1885, of which the present one is the successor, the language was, “to procure steam fire engines and other apparatus suitable for extinguishing fires.” — Session Laws 1885, page 84. By this provision the council was authorized to act directly in the purchase of the engines and apparatus. But when the fire and police board was established and its powers defined, the lnguage was changed, and the authority of the council limited to making provision for the purchase, the exT penditure of the money provided, being confided to the board. Section 50 of article 3 of the present charter provides that immediately upon the appointment of the board all engines, horses and other property pertaining to the fire and police service shall be turned over to the board, and such property together with all appliances thereafter purchased or acquired by or for the city shall be under the *387 control and management of the board. In the words “purchased or acquired by or for the city,” counsel find an implication that the power of the fire and police board to make the purchases and expend the money is not exclusive — that it is shared with the city itself. I do not think those words are even suggestive of difficulty. The corporation operates only through its officers and agents. An act done by its agent or officer properly authorized, is an act done by and for it. The fire and police board is one of the agencies through which the city acts. "Whatever is lawfully done by that board is done in behalf of the city; and any purchase or expenditure made by it in pursuance of the authority with which the law has clothed it is a purchase or expenditure by and for the city.
By section 94 of article 3 it is provided that the superintendent of supplies — not “commissioner of supplies” — shall, for and in behalf of the city, purchase all furniture, books, stationery, tools, materials and supplies, and all things whatsoever necessary for the use of the several departments, officers and employees of the city. The foregoing would hardly give the superintendent of supplies any authority in the way of expending money appropriated to the fire and police board for the purchase of an engine and hose, and the repairs of hose houses. The enumerated items could scarcely be said to include fire appliances and apparatus, or the repair of hose houses. And the words, ‘ ‘ and all things whatsoever necessary for the use of the departments, offices and employees of the city” add nothing to the scope of the preceding language. They are ejusdem generis, and embrace only articles of the same kind with those enumerated.—St. Louis v. Laughlin, 49 Mo. 559; Morse v. Morrison, 16 Colo. App. 449, 66 Pac. 169. But aside from all this for the reasons that the authority of the board *388 as to the expenditure of money appropriated to its own use is exclusive, the provisions respecting the superintendent of supplies has no application to it. By express law that officer is debarred from handling its money. When the appropriation for the use of the board is made, no limitation by the council upon the authority of the board in relation to the expenditure of the fund is of any effect.
The bill adopted by the aldermen appropriates nothing for the maintenance of the bureau of excise. If an appropriation to that bureau is required by law, the council has no discretion to refuse it. Whatever right it may have to determine the amount, an appropriation must be made. It is contended, however, that the appropriation for this bureau asked by the fire and police board, is not required by law. In the detailed statement presented to the mayor by the board, the following was the estimate for the bureau of excise:
“Four license inspectors, $100.00 per month.” The charter makes no provision for license inspectors. Whether these particular inspectors are already in office, or are yet to be appointed, or what duties, when appointed, they are supposed to perform, we are not advised. By section 77 of article 3, the fire and police board is given exclusive authority to grant, refuse and revoke licenses for certain occupations, including the selling and giving away of intoxicating or malt liquors. By section 19 of the same article application for license is made to the board, the applicant deposits the necessary money with the treasurer, the board passes upon his application, and, if it be'granted, the treasurer issues the license. Section 78 authorizes the revocation of a license by the board after a hearing upon a complaint, signed by three reputable citizens of the proper election precinct, charging the holder of the license with the vio *389 lation of some statute or ordinance. The foregoing is the entire statute law relating to the bureau of excise; and I am unable to see in what duty assigned to that bureau the assistance of license inspectors is required. But if they are required, provision is made for their appointment. By the terms of section 4, article 3, the board may, with the approval of the mayor, adopt rules for the appointment, conduct, discipline, compensation and removal of its own subordinates and employees; and may appoint and remove all such clerks, assistants and other officers, subordinates and employees as may be necessary in the exercise of its powers, and the performance of its duties. Of course the appointment or removal must be in accordance with the rules adopted with the consent of the mayor. The license inspectors for whose salaries an appropriation was asked are not statutory officers. Unless created by some agency empowered for the purpose by the charter, there is no such office; and if so created, not being statutory, courts cannot take judicial knowledge of its existence. I find nothing in the alternative writ to indicate what these license inspéctors are, or what it is proposed they shall be; how the office was created, or if not created, how it is intended it shall be created, or in what manner the inspectors have been, or are to be appointed. Without information of any kind on the subject, no court can say that it is the duty of the council to appropriate money for the payment of the supposed inspectors’ salaries. The case of Morgan v. Denver, 14 Colo. App. 147, referred to on both sides, is not in point. The license inspector whose claim was adjudicated in that case, was appointed pursuant to an ordinance creating the office, and defining the duties of the inspector. This court held that in virtue of the various services required of him by that ordinance, he assisted the treasurer, the fire and police board and the department of *390 law, but was not in the special employ of any one of them.
The questions I have been considering are the subject of considerable argument by counsel; and their solution appears, to be regarded as having a relation of some kind to the real subject of the controversy. But while, in its details, the proposed ordinance should conform to the law, a decision' that it ought to embrace certain 'matters and exclude certain other matters, can have no decisive influence upon the main question in the case. Is it a duty of the city council, the performance of which can'be compelled by writ of mandamus, to appropriate for the use of the fire and police board, the exact sums named in the statement of the board to the mayor? Not one of the powers granted to the board respecting its control of the fire and police departments, its performance of executive functions, and the expenditure of its funds, full, complete and exclusive as the grant is, authorizes it to dictate the amount of the appropriation to be made for its use by the city council. None of the subjects upon which those powers are to be exercised has any relation to the enactment of an appropriation ordinance. Whatever authority the board has in the matter of the appropriation is to be found in section 53 of article 3 of the charter. I have already given a history of the legislation of which that section is the final outcome. As it was originally enacted, it may have contemplated an appropriation by the council of the full amount, of the board’s estimates. The board presented a statement of the amount necessary to defray its expenses, and a statement of the probable expenses to be incurred, to the city council. It was then the duty of the council, in the annual appropriation ordinance, to provide for the appropriation of sufficient money to defray the expenses incident to, and to be incurred by the board. I do-not undertake to con *391 strue the language, and it is not necessary that I should. Whatever the intention of the legislature may have been, the section was afterwards amended. The substitution of the mayor for the council for the purpose of receiving the statement is without significance. But the section was further amended by adding words requiring the city council to use the estimates as a basis for the appropriation and conform to them as nearly as the city’s finances would permit. It is upon the section as thus amended that the decision of the question now under consideration must turn.
Mandamus lies to compel the performance of a duty purely ministerial in its nature, involving no discretionary right, and not requiring the exercise of judgment; but it does not lie where the performance of the duty is discretionary, or necessitates the exercise of judgment. — High on Extraordinary Remedies, § 24. This principle is fundamental, and I do not understand that it is disputed here. The words added to the original section contemplate a possible condition of the city’s finances which would render an appropriation to the fire and police board, of the full amount of its estimates, impracticable, or, at least, unadvisable. The estimated income may not be sufficient to give to each of the several departments of the city government all that it requires; and no appropriation beyond the estimated income can be made. For 1902 the income was estimated at $966,406, and the bill passed by the aldermen.appropriated all of it. The amount falls considerably short of the aggregate demands of the different departments, and must be apportioned among them fairly. To use the estimates of the fire and police board as a basis and conform to them as nearly as the city’s finances will permit, is simply to give the board such portion of the entire appropriation as would be its share upon a proper *392 distribution of tbe insufficient fund among all of tbe departments.
The charter does not direct the appropriation to the fire and police board of any certain sum. Where the estimated income is insufficient to satisfy all, it requires the appropriation to the board of a sum which, the relative importance of all the departments being duly considered, shall be its just proportion of the whole; and to fairly apportion the fund among the departments so that the appropriation to the board shall conform to its estimates as nearly as the city’s finances will permit, demands the exercise of sound and discriminating judgment.
The charter imposes upon the council the duty to enact the annual appropriation ordinance, and performance of that duty may be compelled by mandamus. ' But where the income is insufficient to satisfy the demands of all the departments, compliance with the law requiring as close a conformity to the estimates of the fire and police board as the condition of the finances will permit, renders the duty to be performed ' quasi judicial in character; and whatever remedy the board may have if, in the appropriation ordinance to be adopted, it fail to receive what it regards as its just proportion of the revenue, that remedy is not mandamus.—United States v. Seaman, 17 How. 225; United States v. Commissioners, 5 Wall. 563; Ditch Co. v. Maxwell, 4 Colo. App. 477.
The demurrer to the alternative writ should have been sustained; but the court, having overruled it, should have carried the demurrer to the answer back to the writ, and adjudged it insufficient.
The judgment is reversed, with instruction to dismiss the proceeding. Reversed.
Gunter, J.,, concurs.